UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

                                         Case No.: 13-70840-las

Bob Brooks *aka* Boris Burakovsky and
Alexandra Brooks *aka* Alexandra
Burakovsky,

                                         Chapter 11

                Debtors.
------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER

*Appearances:*

Fridlin & Associates, PC
*Attorneys for Igor Korsunsky*
*and Yelena Korsunskaya*
By: Elaine Fridlin, Esq.
1517 Voorhies Avenue, 4th Floor
Brooklyn, New York 11235


Cuevas & Greenwald, P.C.
*Attorneys for the Debtors*
By: Wayne M. Greenwald, Esq.
475 Park Avenue South – 26th Floor
New York, New York 10016


Office of the United States Trustee
By: Alfred M. Dimino, Esq.
560 Federal Plaza, Room 560
Central Islip, New York 11722


HON. LOUIS A. SCARCELLA, UNITED STATES BANKRUPTCY JUDGE

Before the Court is the motion dated November 4, 2013 by creditor, Igor Korsunsky

("Korsunsky"), pursuant to Rule 60(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ.

P.") as made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") seeking to (1) rescind an order dated May 20, 2013 authorizing the

retention of Cuevas & Greenwald, P.C. ("C&G"), as counsel to the Debtors, Bob and Alexandra

Brooks (the "Debtors" or "Brookses"), and (2) disqualify C&G from representing the Debtors in

this bankruptcy case (the "Motion for Reconsideration") [dkt no. 70]. C&G filed opposition

dated November 12, 2013 to the Motion to Disqualify (the "C&G Objection") [dkt no. 71]. The

issues before the Court are (a) whether Korsunsky waived his right to challenge the retention of

C&G, and (b) whether the May 20, 2013 retention order should be rescinded pursuant to Fed. R.

Civ. P. 60(b). For the reasons set forth below, the Motion for Reconsideration is denied. The

following constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy

Rule 7052.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing

Order of Reference entered by the United States District Court for the Eastern District of New

York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated

December 5, 2012, effective *nunc pro tunc* as of June 23, 2011.

## FACTS[1]

I.      Background and Prepetition Litigation Between the Parties.

Korsunsky and his wife, Yelena Korsunskaya (together, the "Korsunskys") are fifty

percent owners of Aqua Shield, Inc. ("Aqua Shield"), which produces pool enclosures and

similar structures. The Debtors own the other fifty percent of Aqua Shield. The Korsunskys and

---

[1] These facts are taken from the pleadings, exhibits and other papers submitted by the parties and the Court's docket.

the Debtors are all directors and officers of Aqua Shield.

In November of 2008, the Korsunskys and Aqua Shield commenced an arbitration proceeding against the Debtors (the "Arbitration Proceeding"). On or about February 1, 2013, the arbitrator rendered a decision in favor of the Korsunskys and Aqua Shield against the Debtors (the "Arbitration Award").

Bob Brooks initially approached Alla Kachan, Esq. ("Kachan") of the Law Office of Alla Kachan, P.C. under an alias, Boris Brooks, about a potential bankruptcy filing. After an initial consultation with Kachan, the Brookses then approached Wayne M. Greenwald, Esq. ("Greenwald") regarding their desire to file for bankruptcy. On February 11, 2013, ten days after the Arbitration Award was rendered, the Debtors paid Greenwald an initial retainer of $5,000 in connection with their bankruptcy filing.

II.    Prior Proceedings in this Case.

The Debtors filed for chapter 11 relief under the Bankruptcy Code on February 21, 2013 (the "Petition Date") and the case was assigned to former Bankruptcy Judge Dorothy Eisenberg. A notice dated February 22, 2013 (the "Bankruptcy Notice") [dkt. 9] of the Debtors' bankruptcy filing, the meeting of creditors pursuant to 11 U.S.C. § 341, and statutory deadlines was sent by the Bankruptcy Noticing Center to the Debtors' creditors, including Aqua Shield at its offices in West Babylon, New York, and the Korsunskys in care of Howard Levine, Esq. of Rappaport Hertz Cherson & Rosenthal, P.C. The Bankruptcy Notice also lists Greenwald of Wayne Greenwald, P.C. as counsel for the Debtors.

The next day, the Debtors filed an *ex parte* application seeking an order approving the retention of Greenwald's firm, C&G,[2] as their chapter 11 counsel (the "Retention Application")

---

[2]  Although the Debtors' Statement of Financial Affairs and Bankruptcy Notice list Wayne Greenwald PC as the Debtors' counsel, the bankruptcy petition and the retention application list the Debtors' counsel as C&G, with both

[dkt no. 8]. In his declaration dated February 22, 2013 (the "February 22 Declaration") in support of the Retention Application, Greenwald disclosed, pursuant to 11 U.S.C. §§ 329 and 504 and Bankruptcy Rule 2014, that (1) he has known Igor Krol, Esq.,[3] counsel for Aqua Shield, on a collegial basis for more than two decades, (2) he once represented Compudye, Inc. and Compudye Fab Corp. (together, "Compudye") in their chapter 11 filings in this district, and (3) Korsunsky held an equity interest in, and was once an officer of, Compudye. Compudye, Inc. was engaged in the business of dying and washing fabrics for the garment industry and Compudye Fab Corp. was a sublessor of Compudye Inc.'s business premises. Korsunsky was a 33% equity owner of Compudye with two other unrelated individuals. Compudye filed for bankruptcy relief on May 13, 2007 and the chapter 11 cases were converted to cases under chapter 7 on April 18, 2008. Compudye Fab's case was closed on August 13, 2010 and Compudye Inc.'s bankruptcy case was closed on January 5, 2012.

On March 19, 2013, Kachan filed a notice of appearance stating that she was representing the Korsunskys and requesting that she be served with all notices and papers filed in this bankruptcy case. Judge Eisenberg held the initial Chapter 11 case conference on April 4, 2013 at which Greenwald appeared on behalf of the Debtors, Kachan appeared on behalf of the Korsunskys, and Alfred M. Dimino, Esq. appeared on behalf of the Office of the United States Trustee (the "U.S. Trustee").

On April 10, 2013, at the request of the U.S. Trustee, the Debtors refiled the Retention Application with the same February 22 Declaration by Greenwald attached, and noticed the

---

entities having the same business address. It would appear that Wayne Greenwald, P.C. and C&G are either one and the same or Wayne Greenwald, PC is or was at some point affiliated with C&G.

[3] Igor Krol is an attorney who represented Korsunsky in his individual capacity and as principal of several of his companies in various unrelated litigation. Krol had referred Greenwald to Korsunsky as potential bankruptcy counsel for two companies in which Korsunsky had an ownership interest, Compudye, Inc. and Compudye Fab Corp. Later, Krol also referred Greenwald to the Debtors as potential bankruptcy counsel in this chapter 11 case.

Retention Application for a hearing before the Court on May 16, 2013 [dkt no. 25].  Kachan and other creditors who filed a notice of appearance were served with a copy of the Retention Application and the notice of the scheduled hearing.

Two days later on April 12, 2013, the Debtors filed an application for an order to show cause as to why Kachan should not be disqualified from representing the Korsunskys in this bankruptcy case ("Kachan Disqualification Motion") [dkt no. 26] because Bob Brooks had initially consulted with Kachan about filing for bankruptcy.  Judge Eisenberg entered an order to show cause on the same day scheduling a hearing on the Kachan Disqualification Motion for April 18, 2013 (the "April 18, 2013 Hearing").  On April 17, 2013, Kachan, on behalf of the Korsunskys, filed opposition to the Kachan Disqualification Motion (the "Objection and Cross Motion") [dkt no. 32], which also contained an objection to the Retention Application and a cross motion seeking to remove Greenwald and C&G as the Debtors' bankruptcy counsel, which was supported by a declaration from Korsunsky (the "Korsunsky April 2013 Declaration").

Korsunsky asserted in the Objection and Cross Motion that a "[t]rue conflict of interest in [Greenwald's] representation of the Brookses exists for Mr. Greenwald, which arose when he previously represented Mr. Korsunsky as principal in the bankruptcy filings of [Compudye]." Objection and Cross Motion, ¶6.  Although there was no retention agreement between Korsunsky personally and Greenwald, Korsunsky contended that during Greenwald's representation of Compudye, Korsunsky (1) consulted with Greenwald regarding his dispute with the Debtors, (2) advised Greenwald that he was considering commencing an arbitration proceeding against his business partner, and (3) imparted privileged, confidential information regarding his interest in Aqua Shield, the financial state of Aqua Shield, and the nature of the ongoing dispute to Greenwald in the course of these consultations.  Korsunsky also asserted that

Greenwald received confidential information with regard to Korsunsky's personal and business finances, including the issues that arose with respect to Aqua Shield. Korsunsky April 2013 Declaration, ¶ 5. Korsunsky argued that Greenwald's February 22 Declaration in support of the Retention Application did not disclose the consultations he provided to Korsunsky with respect to (i) Aqua Shield, including what would happen to any monetary award received by Korsunsky if the Brookses filed for bankruptcy or (ii) the receipt of confidential information regarding his personal and business finances which he allegedly provided to Greenwald. Accordingly, by the Objection and Cross Motion, Korsunsky moved for Greenwald's disqualification pursuant to Rules 1.9 and 1.18 of the New York Rules of Professional Conduct ("N.Y. Rules of Prof. Conduct").

Rule 1.18(c) of N.Y. Rules of Prof. Conduct states:

> A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter . . . .

N.Y. Rules of Prof. Conduct 1.18(c). In this regard, Korsunsky specifically alleged that Greenwald received vital information about Aqua Shield's corporate structure and finances, the nature of the dispute between the parties, and the acts that precipitated that dispute, and that Greenwald provided advice to Korsunsky as to his prospective rights should the Debtors seek bankruptcy protection and that any monetary award received by Korsunsky may be discharged.[4]

Rule 1.9(a) of N.Y. Rules of Prof. Conduct states:

> A lawyer who has formerly represented a client in a matter shall

---

[4] Rule 1.18 deals with a situation whereby a lawyer receives information from a prospective client that could be significantly harmful to a client with interests materially adverse to those of the prospective client. In this case, the prospective clients would have been the Debtors and not Korsunsky because Korsunsky does not argue that he was a prospective client but that he was actually a former client of Greenwald. Thus, Rule 1.18 is not applicable to the circumstances of this case.

> not thereafter represent another person in the same or a
> substantially related matter in which that person's interests are
> materially adverse to the interests of the former client unless the
> former client gives informed consent, confirmed in writing.

N.Y. Rules of Prof. Conduct 1.9(a).  Korsunsky argued that notwithstanding Greenwald being

retained in a different bankruptcy case, Greenwald provided advice and gleaned information

relating to this bankruptcy case.  The advice given to the Debtors is materially adverse to

Korsunsky's interest, and Korsunsky did not consent to Greenwald's representation of the

Debtors.

However, because the Cross Motion portion of Korsunsky's opposition to the Kachan

Disqualification Motion was not timely noticed for the April 18, 2013 Hearing, Judge Eisenberg

did not consider it and adjourned the Cross Motion to May 16, 2013, the same date as the hearing

on the Retention Application.  After considering the papers filed in connection with, and in

opposition to, the Kachan Disqualification Motion, and the arguments made by the parties and

the Office of the United States Trustee at the April 18, 2013 Hearing, Judge Eisenberg granted

the Kachan Disqualification Motion and entered an amended order dated May 7, 2013 directing

that Kachan be disqualified as Korsunskys' bankruptcy counsel in this chapter 11 case.

On April 23, 2013, Kachan filed a letter with the Court [dkt no. 39] requesting that the

Cross Motion seeking the disqualification of Greenwald and C&G be withdrawn in its entirety.

As a result, at the May 16, 2013 adjourned hearing on the Debtors' Retention Application (the

"May 16, 2013 Hearing"), there was no written opposition on the record to the Debtors'

Retention Application.  The Korsunskys had retained their current counsel, Elaine Fridlin, Esq.

("Fridlin"), to represent them in the bankruptcy case, and Fridlin appeared at the May 16, 2013

Hearing.  However, Korsunsky did not request an adjournment of the hearing on the Retention

Application to renew his opposition to the Debtors' proposed retention of C&G as their

bankruptcy counsel in this case.  Rather, at the May 16, 2013 Hearing, Korsunsky through counsel verbally reserved the right to object to the retention of C&G at a later date.  Hearing no opposition to the Retention Application and finding that the requirements under 11 U.S.C. § 327(a) and Bankruptcy Rule 2014 were satisfied, Judge Eisenberg entered an Order dated May 20, 2013 authorizing the Debtors to retain C&G as their attorneys in this bankruptcy case (the "Retention Order").

In the meantime, the Korsunskys had filed a motion dated May 10, 2013 [dkt no. 44] seeking an order pursuant to 11 U.S.C. § 362(d) terminating the automatic stay to permit the Korsunskys to obtain access to Aqua Shield, and its books and records, computers, and day-to-day operations (the "Motion for Relief from Stay").  The Debtors opposed the Motion for Relief from Stay and the Korsunskys filed a reply.  The Motion for Relief from Stay was heard on May 28, 2013 and Judge Eisenberg entered an order on June 13, 2013 vacating the automatic stay with respect to the Arbitration Award and the Arbitration Proceeding.

In addition, on May 21, 2013, the last date to object to dischargeability of debt, the Korsunskys and Aqua Shield commenced an adversary proceeding against the Debtors seeking a determination that the Arbitration Award owed to them was nondischargeable pursuant to section 523(a)(2) and (4) of the Bankruptcy Code.  The Debtors filed a motion to dismiss the adversary proceeding on August 22, 2013 (the "Motion to Dismiss") to which the Korsunskys filed papers in opposition on September 27, 2013.  The Debtors filed a reply on September 30, 2013.  The Motion to Dismiss was heard on October 1, 2013 at which time Judge Eisenberg denied the Motion to Dismiss with respect to the first, second, third, fourth, fifth, and eighth claims for relief to the extent they rely on section 523(a)(4) of the Bankruptcy Code, but granted the Motion to Dismiss with respect to all other claims for relief.  An order reflecting Judge Eisenberg's

decision was entered on November 26, 2013.

III.    Motion for Reconsideration.

On November 5, 2013, Korsunsky filed this Motion for Reconsideration seeking to rescind the Retention Order and to disqualify Greenwald and C&G pursuant to 22 NYCRR § 1200.27(a) and DR 5-108(A) of the New York Lawyer's Code of Professional Responsibility.[5] Essentially, the Motion for Reconsideration renews Korsunsky's assertion, previously raised in the withdrawn Objection and Cross Motion, that the disqualification of Greenwald and C&G is necessary because (1) Greenwald represented Korsunsky in a substantially related matter in which the interests of the Debtors are materially adverse to the interests of Korsunsky and (2) Greenwald would use Korsunsky's confidential information against him, his wife and Aqua Shield. In addition, the Motion for Reconsideration states that the motion was timely made within one year of the date of the Retention Order under Fed. R. Civ. P. 60(b).

In support of the Motion for Reconsideration, Korsunsky submitted two affidavits, his own and that of Elise Schwarz ("Schwarz"), not previously submitted at or prior to the May 16, 2013 Hearing on the proposed retention of C&G as Debtors' counsel. In his affidavit dated October 22, 2013 (the "Korsunsky Affidavit"), Korsunsky asserts the same arguments raised in the Objection and Cross Motion - that Greenwald's receipt of confidential personal and business information from Korsunsky creates an obvious conflict of interest that requires Greenwald's disqualification because there is a strong likelihood that Greenwald would use Korsunsky's confidential information against him, his wife, and Aqua Shield in the instant bankruptcy case, adversary proceeding and state court proceedings by knowing what to ask for in discovery, what witnesses to depose, what questions to ask them, and innumerable other uses.

---

[5] The Court notes that effective April 1, 2009, the Code of Professional Responsibility and its associated Disciplinary Rules ("DR") were replaced by the Rules of Professional Conduct, and DR 5-108(A) has been replaced essentially by Rule 1.9 of the N.Y. Rules of Prof. Conduct, which was discussed in the Objection and Cross Motion.

Schwarz was Korsunskys' attorney in the Arbitration Proceeding.  Her affidavit (the "Schwarz Affidavit") was subscribed and sworn before a notary public in Edinburgh, Scotland on June 18, 2013, five months prior to the filing of this Motion for Reconsideration.  The Schwarz Affidavit states, in pertinent part:

> 3.  As far back as early 2008, when I was first retained, Igor Korsunsky told me, on more than just a few occasions, that he was consulting with his former bankruptcy attorney, Mr. Greenwald, as regards what might happen if the Brooks (sic) were to declare bankruptcy either before, during, or after, the Korsunskys' litigation against them.
>
> 4.  I distinctly recall Mr. Korsunsky telling me that he trusted Mr. Greenwald and was telling him everything about the facts at issue in the litigation I was retained for.
>
> 5.  Several times, over the course of several meetings with Mr. Korsunsky, I would ask him questions or give him an alternative viewpoint and he would then go and consult with Mr. Greenwald, sharing my thoughts with him.  He would then come back and tell me what Mr. Greenwald had advised him.

Schwarz Affidavit, ¶ 3-5.

Korsunsky admits that without the Schwarz Affidavit, he does not have any proof other than his word that Greenwald's representation of the Debtors constitutes a direct conflict of interest with Greenwald's prior representation of Korsunsky and the advice given to him. Korsunsky Affidavit, ¶16.  Korsunsky asserts that the Schwarz Affidavit is newly discovered evidence that was not available at the time Greenwald was retained to represent the Debtors and there were very pressing matters that had to be addressed in this bankruptcy case which resulted in the delay in bringing this motion.  Korsunsky noted that the beginning of the bankruptcy case was fraught with confusion and unnecessary delay when (a) Kachan was disqualified as his counsel, (b) Greenwald allegedly prohibited him and his wife from entering the premises of Aqua Shield, (c) Korsunsky had to retain an attorney to seek relief from the automatic stay, (d)

the Debtors attempted to remove the Arbitration Proceeding from the state court to the District Court, and (e) the deadlines for objecting to dischargeability of debt and to file a proof of claim were fast approaching.

The C&G Objection filed on November 13, 2013 denies that there are legally sufficient grounds to support the relief under Fed. R. Civ. P. 60(b).  In the C&G objection, Greenwald asserts that the Motion for Reconsideration: (1) is time-barred pursuant to Fed. R. Civ. P. 59, as made applicable by Bankruptcy Rule 9023, (2) fails to satisfy Fed. R. Civ. P. 60(b) as the Retention Order is not a "final" order and the Schwarz Affidavit is not new evidence or any evidence of fraud, mistake, or impropriety, and (3) fails to satisfy Fed. R. Civ. P. 60(c)(1) because the motion is not made within a reasonable time.  Greenwald contends that he did not have to disclose that he consulted with Korsunsky and received confidential information because he only received confidential information about Compudye.  Furthermore, Greenwald argues that the statements in the Schwarz Affidavit could have been discovered in time with reasonable diligence to move for relief under Rules 59 and 60(b) but Korsunsky does not demonstrate that he made any diligent effort to obtain the statements in the Schwarz Affidavit in a timely manner. In addition, Greenwald contends that the Schwarz Affidavit suffers from various deficiencies under the Federal Rules of Evidence ("Fed. R. Evid.") such as (a) not being sworn under oath under Fed. R. Evid. 603, (b) containing hearsay statements pursuant to Fed. R. Evid. 801 and 802, and (c) containing statements that are cumulative of those statements made by Korsunsky such that they add only a small increment of probative value.  Greenwald asserts that there is no proof of continuing communications between him and Korsunsky after the meeting of creditors was conducted in the Compudye cases, especially after the Compudye cases were converted. Greenwald avers that his subsequent communications were limited to informing Korsunsky

about the request of the Compudye trustee's accountant for information and notifying Korsunsky by email in March of 2009 that Compudye's trustee commenced an adversary proceeding against BIS Trucking Inc., another entity in which Korsunsky had an ownership interest.

A reply dated November 17, 2013 (the "Reply") [dkt no. 72] was filed on behalf of Korsunsky merely reiterating his argument that he had sought and obtained Greenwald's advice regarding matters outside of Compudye's bankruptcy cases. In support of his renewed argument, Korsunsky submits the same March 2009 email exchange Greenwald referenced in his objection. This email exchange purely notified Korsunsky about the Compudye trustee commencing an adversary proceeding against BIS Trucking and explained that it was an action to recover payments received which allegedly enabled BIS Trucking to recover more money on its claims than other Compudye creditors.

Judge Eisenberg conducted a hearing on the Motion for Reconsideration on November 19, 2013 (the "Initial Hearing"). At the Initial Hearing and in response to inquiries by Judge Eisenberg, Korsunsky stated that personal and business records were provided to Greenwald in 2008 and 2009 and that he had communications with Greenwald up to 2009. In response, Greenwald asserted, *inter alia*, that his representation of Compudye effectively ceased in 2008 when the Compudye chapter 11 cases were converted to chapter 7 cases and the chapter 7 trustee took over the cases. Greenwald contended that he was aware that Korsunsky could neither fund a plan of reorganization for, nor make a loan to, the Compudye entities in 2007 and that the Compudye entities needed to obtain funding from a third party. Greenwald argued that if he had received the Korsunskys' personal tax returns, such returns would be filed with the taxing authorities and thus, because the information in the returns would have been disclosed to third parties, any confidences or privilege with respect to those returns would have been waived.

Greenwald maintained that this bankruptcy case is about the Debtors' financial condition and not the financial condition of the Korsunskys and that any information obtained from the Korsunskys would be outdated and irrelevant.

At the Initial Hearing, Judge Eisenberg noted the absence of any evidence to support Korsunsky's arguments and determined that an evidentiary hearing on whether the Motion for Reconsideration satisfies the requirements of Fed. R. Civ. P. 60(b) was necessary. Although the evidentiary hearing was initially scheduled for January 16, 2014, Fridlin filed a letter dated January 15, 2014 [dkt no. 78] requesting an adjournment, on consent of Greenwald, to a date in early March because the parties were exchanging discovery and planned to conduct depositions. In particular, Greenwald would be deposing the movant, Korsunsky, on February 4, 2014.

Before the evidentiary hearing could be conducted, Judge Eisenberg retired on March 27, 2014 and this bankruptcy case and the related adversary proceedings were reassigned to this Court on May 19, 2014.

Due to various scheduling conflicts, the Court did not hear the Motion for Reconsideration until July 31, 2014 (the "July 31, 2014 Hearing"), when Fridlin and Greenwald appeared and argued the motion. At the July 31, 2014 Hearing, the Court focused on the issues of whether (i) Korsunsky waived his right to object to the Retention Order and (ii) Korsunsky satisfied the requirements of Fed. R. Civ. P. 60(b) so as to have this Court reconsider Judge Eisenberg's Retention Order. Korsunsky did not offer to testify at the July 31, 2014 Hearing or produce any documentary evidence to support his request for 60(b) relief, relying solely on his affidavit and that of Schwarz. Korsunsky did request that if the Court were to conduct an evidentiary hearing, that accommodations be made for Schwarz to testify via videoconference.

In determining the Motion for Reconsideration, the Court has considered the motion

itself, the filings with respect thereto (including exhibits), and each of the parties' arguments at

the July 31, 2014 Hearing.  The Court also has taken judicial notice of the contents of the Court's

docket, including this bankruptcy case and the adversary proceeding.  *Teamsters Nat'l Freight*

*Indus. Negotiating Comm. et al. v. Howard's Express, Inc. (In re Howard's Express, Inc.)*, 151

Fed. Appx. 46, 48 (2d Cir. 2005) (Courts are empowered to take judicial notice of public filings,

including a court's docket).

DISCUSSION

The Motion for Reconsideration requests the Court to reconsider and vacate Judge

Eisenberg's Retention Order pursuant to Fed. R. Civ. P. 60(b) and find that Greenwald and C&G

should be disqualified.  Motions to disqualify are viewed with disfavor in the Second Circuit

because a party is generally entitled to retain counsel of his or her choosing and a party's choice

of counsel is given great deference.  *Bd. of Educ. of New York v. Nyquist*, 590 F.2d 1241, 1246

(2d Cir. 1979); *Exco Resources, Inc. v. Milbank, Tweed, Hadley & McCloy L.L.P., et al. (In re*

*Enron Corp.)*, No. 02 Civ. 5638 (BSJ), 2003 U.S. Dist. LEXIS 1442, at *12 (S.D.N.Y. Jan. 28,

2003); *In re Persaud*, 467 B.R. 26, 37 (Bankr. E.D.N.Y. 2012).  For this reason, before the Court

discusses whether relief under Fed. R. Civ. P. 60(b) is warranted, the Court must first decide

whether Korsunsky waived his right to challenge the Debtors' retention of C&G as counsel.

I.    Issue of Waiver.

Although Korsunsky, at the May 16, 2013 Hearing, reserved his right to object to C&G's

retention at a later date, such right is not without an end date.  "An unjustified delay in bringing a

motion to disqualify provides a separate ground to deny the relief requested in the underlying

motion."  *KLG Gates LLP v. Brown*, 506 B.R. 177, 192 (E.D.N.Y. 2014) (quoting *In re*

*WorldCom, Inc.*, 311 B.R. 151, 166-67 (Bankr. S.D.N.Y. 2004)).  In determining whether such a

13

waiver occurred, courts consider not just the length of the delay in bringing a motion to disqualify but also the following factors:

> 1) when the movant learned of the conflict;
> 2) whether the movant was represented by counsel during the delay;
> 3) why the delay occurred;
> 4) whether the motion was delayed for tactical reasons; and
> 5) whether disqualification would result in prejudice to the nonmoving party.

*KLG Gates LLP*, 506 B.R. at 192 (finding waiver after party seeking disqualification waited almost 3 years after he knew of the alleged conflict before bringing the motion); *In re 444 N. Nw. Hwy, LLC*, 477 B.R. 88, 91 (Bankr. N.D. Ill. 2012) (finding waiver after waiting 11 months to assert any issue as to disqualification of counsel); *Rohm and Hass Co. v. American Cynamid Co.*, 187 F. Supp. 2d 221, 230 (D.N.J. 2001) (finding waiver where the motion to disqualify was filed two and a half years after the case commenced). A delay of even two months in bringing a motion to disqualify has been found to be unjustified. *In re Enron Corp.*, No. 02 Civ. 5638 (BSJ), 2003 U.S. Dist. LEXIS 1442, at *11 n. 2. In this case, Korsunsky waited five months after the Retention Order was entered and even longer from when he knew of the alleged conflict before bringing this motion.

        A.     *When Movant Learned of the Alleged Conflict.*

Korsunsky first learned about the alleged conflict in late February of 2013 when he and his wife received the Bankruptcy Notice concerning the Debtors' bankruptcy filing. The Bankruptcy Notice identified Greenwald as the Debtors' bankruptcy counsel. Thus, Korsunsky knew of the alleged conflict well before the May 16, 2013 Hearing to consider the Debtors' application to retain Greenwald's firm as their counsel and more than eight months prior to the filing of the Motion for Reconsideration.

B.      *Whether Movant was Represented by Counsel.*

Kachan initially represented the Korsunskys no later than March 19, 2013 when she filed her notice of appearance with the Court, and she had access to this bankruptcy case's docket and notice of the Debtors' initial application to retain Greenwald's firm which was filed the day after the Petition Date.  Yet, Korsunsky did not object to retention of Greenwald's firm for almost two months after the Petition Date.  When Korsunsky did file an objection on April 17, 2013, it was after the Debtors filed their own motion to disqualify Kachan as the Korsunskys' counsel.  It appears that the Korsunskys' Objection and Cross Motion were filed for tactical reasons in response to the Debtors' efforts to disqualify Kachan.  Notwithstanding Kachan's eventual disqualification and Korsunsky's withdrawal of the Objection and Cross Motion, Korsunsky was not without legal counsel for any extended period of time as he retained Fridlin as substitute bankruptcy counsel soon thereafter.

C.      *Why the Delay Occurred.*

Korsunsky's explanation as to why the delay occurred was that he needed to obtain corroborating testimony from Schwarz but Schwarz had relocated to Scotland.  At the Initial Hearing, Korsunsky stated that the delay was in part due to the time it took for Schwarz to travel from Scotland to London to get any documents, such as the Schwarz Affidavit, notarized.  The Court finds Korsunsky's explanation to be unconvincing.  First, the Schwarz Affidavit was actually sworn to in the "City of Edinburgh Scotland" at the "Consulate General of the United States of America," which contradicts Korsunsky's explanation for the delay.  Second, Korsunsky could have sought the Schwarz Affidavit as early as February 2013, yet he has not demonstrated that he made any diligent effort to obtain the affidavit as soon as he was aware of

Greenwald's involvement in the bankruptcy case. Even if Korsunsky did not consider obtaining the Schwarz Affidavit until after Fridlin was retained as substitute counsel, Korsunsky had several weeks to procure the Schwarz Affidavit before the May 16, 2013 Hearing. If Korsunsky desired more time, he could have voiced the importance of this affidavit and requested an adjournment of the May 16, 2013 Hearing to allow sufficient time to obtain the Schwarz Affidavit. This he did not do.

Third, notwithstanding Korsunsky's belief that the Schwarz Affidavit was essential to his motion for reconsideration and to disqualify Greenwald and C&G, Korsunsky did not file the Motion for Reconsideration immediately after receiving the Schwarz Affidavit. The Schwarz Affidavit was dated June 18, 2013, but Korsunsky did not file the Motion for Reconsideration until November 5, 2013. Further, Korsunsky did not offer any explanation as to why the Motion for Reconsideration was filed several weeks after he signed his own affidavit in support in October.

Korsunsky explained at the July 31, 2014 Hearing that the delay of almost five months to bring the Motion for Reconsideration after securing the Schwarz Affidavit was due to (1) Schwarz's unavailability to testify due to a personal tragedy and (2) Korsunsky's focus on what he believed were fast approaching deadlines in this bankruptcy case. Yet, the unavailability of Schwarz to give live testimony before this Court was not a sufficient reason to delay filing the Motion for Reconsideration as a hearing scheduled to accommodate Schwarz's situation could have been arranged.

The Court also finds Korsunsky's preoccupation with the deadlines in this bankruptcy case to be an uncompelling basis for waiting almost five months before filing the Motion for Reconsideration for several reasons. First, Korsunsky had almost one month before the

16

Retention Application would be heard by Judge Eisenberg to renew his objection to the Retention Application, yet he did not take the opportunity to do so.  If Korsunsky felt he had insufficient time to address the issue of the alleged conflict properly, Korsunsky could have requested an adjournment of the May 16, 2013 Hearing to consider the Retention Application. Yet, Korsunsky did not raise any objections to C&G's retention at the May 16, 2013 Hearing or, at a minimum, request an adjournment of the hearing to allow his substitute bankruptcy counsel an opportunity to examine the substance of the Retention Application and to file the necessary papers given the seriousness of the issue at hand.  Rather, Korsunsky simply reserved the right to object at a later date.  Despite this reservation, in the weeks and months following the entry of the Retention Order, Korsunsky neither filed a motion under Fed. R. Civ. P. 59 or under Fed. R. Civ. P. 60(b) for reconsideration nor appealed the Retention Order even though he knew of the underlying facts of his perceived conflict with Greenwald that formed the basis for the Motion for Reconsideration from the moment he had notice of the Debtors' bankruptcy filing.

Instead, Korsunsky and his counsel focused their efforts on (1) bringing the Motion for Relief from Stay, which was filed six days prior to the May 16, 2013 Hearing on the Retention Application, and (2) drafting the complaint to object to the dischargeability of the Arbitration Award.  Apparently, Korsunsky determined that the Motion for Relief from Stay and the dischargeability complaint took precedence over the conflict concerning Greenwald's representation of the Debtors and the potential disclosure of confidential information allegedly provided by Korsunsky to Greenwald, and renewing his objection to the Retention Application was not as urgent.

Nevertheless, by May 21, 2013, Korsunsky had filed a complaint to determine the dischargeability of the Arbitration Award, and the hearing on the Motion for Relief from Stay

was held on May 28, 2013.  The only other imminent deadline was the June 21, 2013 bar date for

filing proofs of claims which the Korsunskys and Aqua Shield timely filed.  From May 28, 2013

to the filing of the Debtors' Motion to Dismiss the Korsunskys' dischargeability complaint on

August 22, 2013, there was no motion practice and very little activity on the Court's docket for

the main bankruptcy case or the adversary proceeding.  Accordingly, even if Korsunsky's angst

over certain deadlines was justified under the circumstances, he had ample time to renew his

objection to the retention of Greenwald's firm before November 5, 2013, and well in advance of

the ensuing litigation over the Debtors' Motion to Dismiss the dischargeability action that was

conducted on October 1, 2013, which pitted Korsunsky against the very lawyer that he was sure

held confidential information about him and his company, Aqua Shield.  Clearly, Korsunsky's

delay in bringing the Motion for Reconsideration was avoidable.

When a former client is aware of a former attorney's representation of an adversary but

fails to raise an objection promptly when he had the opportunity, the former client is held to have

waived his right to protection from the risk of disclosure of confidences and secrets.  *Sauer Inc.*

*v. Honeywell Bldg. Solutions SES Corp.*, Civ. No. 3:08-92, 2012 U.S. Dist. LEXIS 12881, *6

(W.D. Pa. Feb. 2, 2012).

> D.      *Whether the Motion was Delayed for Tactical Purposes.*

Even though Korsunsky had the Schwarz Affidavit in June of 2013, the Motion for

Reconsideration was filed only after Judge Eisenberg dismissed most of the Korsunskys' claims

for relief asserted in their dischargeability proceeding except for the claims under section

523(a)(4) of the Bankruptcy Code.  Given the circumstances of the filing of the Objection and

Cross Motion and this Motion for Reconsideration, and the numerous opportunities available for

Korsunsky to renew his opposition to the retention of Greenwald's firm well before November 5,

2013, the Court concludes that no reason existed for this delay other than for tactical purposes. If the fear of imminent disclosure of confidential information was so crippling and detrimental to the Korsunsky's litigation strategy in this bankruptcy case and in the adversary proceeding, then the Motion for Reconsideration should have been given the utmost priority and filed at the earliest opportunity and before the parties were to proceed with any significant litigation in this case. While Korsunsky was preoccupied with litigating the Motion for Relief from Stay and the Motion to Dismiss the dischargeability complaint, much of the litigation concerning those motions, especially the Motion to Dismiss, would have been deferred if the Motion for Reconsideration was brought sooner. Korsunsky's willingness to delay the filing of the Motion for Reconsideration until after Judge Eisenberg's ruling on the Motion to Dismiss suggests that the disclosure of confidences, if any, conveyed to Greenwald were either irrelevant or insignificant.

**E.**     *Whether the Non-Moving Party Would be Prejudiced.*

The delay in bringing a disqualification motion increases the prejudice to the non-moving party arising from an attorney's disqualification. At this juncture, any prejudice to Korsunsky as a result of Greenwald's representation of the Debtors outweighs the prejudice that will be suffered by the Debtors should Greenwald be disqualified. Greenwald has represented the Debtors for more than a year and a half and is in the process of assisting the Debtors in preparing their chapter 11 plan and disclosure statement. The delay in the chapter 11 case and the adversary proceeding would be even greater if the Debtors were required to seek new bankruptcy counsel because bankruptcy counsel would need appreciable time to familiarize itself with the Debtors' finances and their seven-year dispute with the Korsunskys.

While Korsunsky theorizes that he would be prejudiced by Greenwald remaining in this

19

case as Debtors' counsel, given the amount of litigation that has already taken place between the

parties before the filing of the Motion for Reconsideration, any prejudice arising from disclosure

of confidential information or litigation strategy has been accounted for and waived by

Korsunsky.  In particular, Korsunsky alleges in the Motion for Reconsideration that as a result of

Greenwald's knowledge, Greenwald would use Korsunsky's confidential information against

him, his wife, and Aqua Shield by knowing what to ask for in discovery, what witnesses to

depose, what questions to ask them , and other innumerable other uses.  However, Korsunsky has

not specified what information, confidential or otherwise, could be used against him by

Greenwald and how it would be relevant to the dischargeability proceeding.  There is no

allegation that Greenwald has knowledge of the Korsunskys' current financial condition.  Any

confidences and personal information conveyed by Korsunsky regarding him and his wife to

Greenwald would have likely become stale by the Petition Date.  As Korsunsky admitted at the

Initial Hearing, he provided records to Greenwald in 2008 and 2009 and that his communications

with Greenwald continued to 2009.  The Compudye cases were converted in 2008 and there is no

evidence that Korsunsky and Greenwald continued to have communications or contact after the

conversion of the Compudye cases, especially after the exchange of emails in March of 2009,

which occurred five years ago.  Even if one were to presume that Greenwald continued to be

active in his representation of the Compudye entities in their bankruptcy cases, the Petition Date

is more than a year after the last Compudye bankruptcy case closed.

More revealing is that if Korsunsky's reason for seeking Greenwald's disqualification is

to avoid being at a litigation disadvantage, then Korsunsky's request for an adjournment of the

January 16, 2014 evidentiary hearing because the parties were exchanging discovery and

planning to conduct depositions, including the deposition of Korsunsky, appears to be at odds

with the stated purpose of the disqualification motion and calls into question how much Korsunsky is really prejudiced by Greenwald's representation of the Debtors.

Korsunsky also argues that because the parties to the Arbitration Proceeding and the dischargeability proceeding and the issues in both proceedings are the same, Greenwald should be disqualified. His premise is flawed. First, Greenwald did not represent Korsunsky or Aqua Shield in the Arbitration Proceeding and the dispute in the Arbitration Proceeding has already been reduced to an award. Second, the issues in both proceedings are different as the Arbitration Proceeding related to the Debtors' liability and the issues before this Court in the dischargeability proceeding concern whether the findings made in the Arbitration Award should be given collateral estoppel effect so as to render such debt nondischargeable. Accordingly, Korsunsky has failed to demonstrate how he is prejudiced by Greenwald's continued representation of the Debtors in this case.

Based upon the foregoing, the Court finds the delay in Korsunsky's bringing the Motion for Reconsideration to be inexcusable. As a result, Korsunsky has waived the right to challenge the Retention Order.

II.    Considerations under Fed. R. Civ. P. 60(b).

Notwithstanding the finding of waiver, the Court will address whether the requirements of Fed. R. Civ. P. 60(b) for relief from a prior court order have been satisfied. Pursuant to Fed. R. Civ. P. 60(b):

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic),

> misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged;
> it is based on an earlier judgment that has been reversed or
> vacated; or applying it prospectively is no longer equitable;
> or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

The decision to grant a motion under Fed. R. Civ. P. 60(b) is subject to the discretion of

the court. *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012). The party seeking relief from an

order has the burden of proof and such relief is granted only upon a showing of exceptional

circumstances. *Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010)

(citing *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001)); *In re Taub*,

421 B.R. 37, 42 (Bankr. E.D.N.Y. 2009). The evidence presented under Fed. R. Civ. P. 60(b)

must be highly convincing, the movant must show good cause for not acting sooner, and no

undue hardship must be imposed on other parties. *Kotlicky v. United States Fidelity & Guar.*

*Co.*, 817 F.2d 6, 9 (2d Cir. 1987); *Spinner v. City of New York*, 01 CV 2715 (CPS), 2003 U.S.

Dist. LEXIS 9411, *17 (E.D.N.Y. Jan. 28, 2003); *In re DeMartino*, 484 B.R. 550, 555 (Bankr.

E.D.N.Y. 2012), *aff'd*, No. 13-CV 990 (RJD), 2014 U.S. Dist. LEXIS 53715 (April 17, 2014).

Korsunsky seeks relief specifically under subsection (2) of Fed. R. Civ. P. 60(b) (newly

discovered evidence). He bases his claim on the allegation that the Schwarz Affidavit contains

newly discovered evidence of his conversations with Greenwald that corroborates his statements

that he consulted with Greenwald. Korsunsky alleges that the newly discovered evidence in the

form of the Schwarz Affidavit could not have been discovered in time to move for a new trial

under Fed. R. Civ. P. 59(b). Rule 59(b) provides that a motion for a new trial or to alter or

amend a judgment in bankruptcy cases shall be filed no later than fourteen days after entry of

judgment.  Having failed to file a motion within the fourteen-day period from the entry of the

Retention Order, Korsunsky now seeks to avoid the time constraints imposed under Fed. R. Civ.

P. 59(b) and asks this Court to grant relief from the Retention Order under Fed. R. Civ. P.

60(b)(2).  The Court will now address Korsunsky's Fed. R. Civ. P. 60(b) argument.

The movant seeking relief from an order under Fed. R. Civ. P. 60(b)(2) must

demonstrate:

> 1) the newly discovered evidence was of facts that existed at the
> time of trial or other dispositive proceeding, (2) the movant must
> have been justifiably ignorant of them despite due diligence, (3)
> the evidence must be admissible and of such importance that it
> probably would have changed the outcome, and (4) the evidence
> must not be merely cumulative or impeaching.

*Int'l Bhd. of Teamsters*, 247 F.3d at 392 (citing *United States v. Int'l Bhd. of Teamsters (In re*

*Carey)*, 179 F.R.D. 444, 447 (S.D.N.Y. 1998)).

To qualify as "new evidence" under Fed. R. Civ. P. 60(b)(2), the movant must present

evidence that is "truly newly discovered or could not have been found by due diligence."  *Space*

*Hunters, Inc. v. United States*, 500 Fed. Appx. 76, 81 (2d Cir. 2012) (citing *United States v.*

*Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir. 1983)).

As noted above, the statements contained in the Schwarz Affidavit do not contain any

new factual information that Korsunsky himself did not have knowledge of, or possess, all along.

If Greenwald received confidential information or provided legal advice to Korsunsky in his

individual capacity as opposed to as an officer or principal of Compudye, then Korsunsky was

fully aware of the details concerning the alleged conflict soon after the Petition Date.  By his

own admission, Korsunsky had personal knowledge of what he now asserts is "newly discovered

evidence," i.e., his consultations with Greenwald, prior to the hearing on the Retention

Application and entry of the Retention Order.  See Korsunsky April 2013 Declaration and the

Korsunsky Affidavit.  The Schwarz Affidavit merely provides corroborating statements, not newly discovered evidence, to Korsunsky's allegations that he conveyed personal confidences and information to Greenwald.  Paragraph 28 of the Reply filed by Korsunsky demonstrates that "[t]he Affidavit of Elise Schwarz, Esq., is used as additional evidence that Mr. Korsunsky did in fact consult with Mr. Greenwald regarding the Brookses and their probable bankruptcy, and Aqua Shield."  The statements contained in the Schwarz Affidavit, however, are based upon Schwarz's recollection of what Korsunsky told her about his conversations with Greenwald as far back as early 2008.  There is no evidence that Schwarz participated in any of the conversations between Korsunsky and Greenwald; and therefore, Schwarz lacks personal knowledge of what was said in those conversations.  Thus, Korsunsky's argument that the Schwarz Affidavit constitutes newly discovered evidence that existed at the time the Retention Application was pending but could not have been discovered must fail.

In fact, the Objection and Cross Motion was based upon Korsunsky's own personal knowledge of the underlying facts pertaining to the alleged conflict.  Despite his personal knowledge of his purported conversations with Greenwald regarding the Brookses' potential bankruptcy filing and the gravity of his accusations, Korsunsky opted to withdraw his previously filed written objection to Greenwald's retention and merely voiced at the May 16, 2013 Hearing a reservation of right to object at a later date.  Now, Korsunsky raises the very same allegations of a conflict of interest in his Motion for Reconsideration before this Court.  Accordingly, the Court cannot find that Korsunsky was justifiably ignorant of the underlying facts and the alleged conflict referenced in the Schwarz Affidavit and raised in the Motion for Reconsideration when they were initially raised by him in the Objection and Cross Motion.

Even if the Court were to assume that the statements in the Schwarz Affidavit constitute

newly discovered evidence that existed at the time of the hearing on the Retention Application and that Korsunsky was justifiably ignorant of these statements and allegations, Korsunsky has not demonstrated why he could not have discovered this evidence prior to the May 16, 2013 Hearing had he exercised due diligence.  Korsunsky could have sought an affidavit from Schwarz as soon as he was aware that Greenwald was seeking to be retained as Debtors' bankruptcy counsel and he fails to describe what attempts, if any, were made to procure the Schwarz Affidavit earlier.  Had Korsunsky exercised due diligence, the Schwarz Affidavit could have been obtained prior to the May 16, 2013 Hearing.  Furthermore, as previously discussed, even if Korsunsky may not have determined that he needed the Schwarz Affidavit until Fridlin was retained, any showing of due diligence by Korsunsky to obtain the Schwarz Affidavit at an earlier date is diminished by his unjustified failure to bring this Motion for Reconsideration shortly after Schwarz signed her affidavit on June 18, 2013.

Overall, Korsunsky has not shown that he exercised any due diligence in trying to discover whether there was other evidence that may have existed with respect to which he had no personal knowledge.  While Korsunsky asserted at the Initial Hearing that he lost any documentary evidence that may have existed at the time he consulted with Greenwald as a result of a house fire, Korsunsky has not shown that he made any diligent effort to seek a production of documents, including communications made to, or notes taken by, Greenwald or Schwarz that would demonstrate that he had sought and received legal advice from Greenwald about the Debtors' bankruptcy filing.  The record is barren as to the reasons why Korsunsky believed he was a former client of Greenwald, i.e., that Greenwald represented his interests and provided legal guidance.

While the Court is sensitive to Korsunsky's claim that Greenwald may be in receipt of

confidences and personal information about the Korsunskys, Korsunsky cannot make bare assertions about the existence of an attorney-client relationship by simply claiming he believed such a relationship existed; rather, the belief has to be reasonable. "A party's 'unilateral belief' that he is represented by counsel 'does not confer upon him the status of client unless there is a reasonable basis for his belief.'" *Knigge v. Corvese*, No. 01 Civ. 5743 (DLC), 2001 U.S. Dist. LEXIS 10254, *8 (S.D.N.Y. July 23, 2001) (quoting *Catizone v. Wolff*, 71 F. Supp. 2d 365, 371 (S.D.N.Y. 1999)). Korsunsky neither recounts with any specific clarity nor details the events and conversations he purportedly had with Greenwald. No dates of such events or conversations are set forth in the Motion for Reconsideration, nor has Korsunsky produced any documentary evidence showing the transmission of confidential information to Greenwald. Korsunsky has not shown that he objectively and reasonably believed Greenwald was his personal lawyer and that he would be prejudiced by Greenwald and C&G's continued representation of the Debtors. Korsunsky had the opportunity to gather evidence through discovery and offer testimonial and documentary evidence at the May 16, 2013 Hearing, and at subsequent hearings. Thus, Korsunsky has not shown he exercised due diligence in seeking out any evidence that may have existed at the time the Retention Application was pending.

Accordingly, the Motion for Reconsideration fails to satisfy the requirements under Fed. R. Civ. P. 60(b)(2) that (i) newly discovered factual evidence existed while the Retention Application was pending but could not have been discovered in time for Korsunsky to object to the Retention Application or the entry of the Retention Order, or to renew his objection soon thereafter, and (ii) Korsunsky was justifiably ignorant of such factual evidence despite exercising due diligence. Therefore, the analysis ends here and the Court need not consider the remaining factors that must be shown to accord relief under Fed. R. Civ. P. 60(b)(2).

Because Korsunsky fails to satisfy his burden of demonstrating the existence of highly convincing evidence that is newly discovered and exceptional circumstances, there is no basis under Fed. R. Civ. P. 60(b)(2) for this Court to reconsider Judge Eisenberg's Retention Order approving the retention of C&G as Debtors' counsel.

CONCLUSION

For the foregoing reasons, Korsunsky's motion to reconsider and vacate the Retention Order dated May 20, 2013, and to disqualify C&G as Debtors' bankruptcy counsel is hereby denied.

So ordered.



**Dated: November 5, 2014**
**Central Islip, New York**

**Louis A. Scarcella**
**United States Bankruptcy Judge**